## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**DARREL J. SINGLETON, JR., ET AL.**                    **CIVIL ACTION**

**VERSUS**                                              **NO. 15-5558**

**FIELDWOOD ENERGY, LLC, ET AL.**                       **SECTION I**

### ORDER & REASONS

The Court has pending before it a motion[1] for summary judgment filed by defendant, Fieldwood Energy, LLC ("Fieldwood"). Plaintiffs, Darrel J. Singleton, Jr. ("Singleton") and Kewanna Singleton, oppose the motion,[2] and Fieldwood filed a reply.[3] For the following reasons, the motion is **DENIED**.

### BACKGROUND

"Fieldwood's business involves the production of oil and gas from its offshore production facilities and platforms . . . ."[4] Plaintiff, Darrel J. Singleton, Jr. ("Singleton"), worked as a rigger on one of Fieldwood's platforms pursuant to a Master Service Contract ("MSC") between Singleton's employer, Acadian Contractors, Inc. ("ACI") and Fieldwood.[5] Paragraph 7 of the MSC states that ACI is an independent contractor which shall not be "deemed to be subject to the control or direction

---

[1] R. Doc. No. 38.
[2] R. Doc. No. 40. Because the claims of plaintiff, Kewanna Singleton, are derivative of her husband's claims, the Court will refer to Darrel J. Singleton
[3] R. Doc. No. 48.
[4] R. Doc. No. 38-2, at 1; R. Doc. No. 40-2, at 3. The parties agree about many pertinent facts, although they strongly disagree regarding the conclusions to be drawn from these facts. The Court will recite facts which are not genuinely disputed and note any material disputes where they exist.
[5] R. Doc. No. 38-2, at 2; R. Doc. No. 40-2, at 3.

of [Fieldwood] as to the details of the Work."[6] The MSC also states that "[i]t is expressly understood that [Fieldwood] is interested only in the compliance of the Work with the specifications hereunder and under the applicable job order. [Fieldwood] shall be entitled to make such inspections and audits of the Work as may be necessary, in [Fieldwood]'s sole discretion, in furtherance of its interests and to determine whether the Work is or has been performed in accordance herewith and with the applicable job order."[7]

The record is undisputed that Fieldwood (1) transported Singleton to and from its facilities by helicopter, and (2) provided the work sites as well as food and lodging while Singleton was on the Fieldwood facilities.[8] The undisputed evidence also reflects that ACI billed Fieldwood for equipment used to perform work on Fieldwood's platform,[9] and that Singleton provided his own boots, clothing, and hard hat.[10] It is undisputed that Singleton had been working exclusively on Fieldwood facilities for nine months preceding the accident,[11] Singleton's paycheck was based on hours approved and paid for by Fieldwood,[12] and Fieldwood could have discharged Singleton from service on Fieldwood facilities.[13]

Singleton's direct supervisor was Bryan Mobley ("Mobley"), who was also an employee of ACI.[14] Mobley's supervisor was J. Michael Alcina ("Alcina"), an employee of Chapman Consulting,

---

[6]R. Doc. No. 40-4, at 4.
[7]R. Doc. No. 40-4, at 4.
[8]R. Doc. No. 38-2, at 5; R. Doc. No. 40-2, at 5.
[9]R. Doc. No. 38-3, at 26.
[10]R. Doc. No. 40-1, at 4.
[11]R. Doc. No. 38-2, at 4; R. Doc. No. 40-2, at 5.
[12]R. Doc. No. 40, at 16.
[13]R. Doc. No. 40, at 16.
[14]R. Doc. No. 38-4, at 2; R. Doc. No. 40-1, at 8.

2

Inc.[15] Alcina states that his role was "supervision and monitoring of construction, maintenance and repair operations on Fieldwood's platforms" and that he "would co-ordinate the supervisors and crew of [his] construction crew to complete those tasks."[16] Alcina states that Mobley "was the immediate supervisor of the ACI crew; however, Mr. Mobley and the rest of the ACI crew ultimately reported" to him.[17] Alcina states that he "inspected the work performed by Mr. Mobley, Mr. Singleton and the other ACI crew" and would "request" that any problems be "corrected."[18] As to Mobley, Fieldwood submits an affidavit from ACI's personnel manager which largely parrots the factual assertions pertaining to Fieldwood and opines that "the work situation of Mr. Mobley as concerns ACI and Fieldwood was nearly identical to the work situation of Mr. Singleton."[19]

Singleton filed this lawsuit after he slipped and fell "due to oil or other foreign substance on the premises" during the course of his work on a Fieldwood platform, alleging that Fieldwood's negligence injured him.[20] Fieldwood now moves for summary judgment on the basis that Singleton was its borrowed employee, rendering Fieldwood immune to tort liability.

In opposition, Singleton disputes Fieldwood's characterization of the chain of command at the Fieldwood facilities and the relationship between Fieldwood and ACI. He asserted at his deposition that he had no idea who Alcina was and that he received his "day-to-day work activities" and "work orders" from his "Superintendent, Bryan Mobley."[21]

---

[15]R. Doc. No. 38-3, at 1-2.
[16]R. Doc. No. 38-3, at 1-2.
[17]R. Doc. No. 38-3, at 3.
[18]R. Doc. No. 38-3, at 3-4.
[19]R. Doc. No. 38-4, at 3.
[20]R. Doc. No. 2, at 2.
[21]R. Doc. No. 40-1 at 5, 8.

3

## LAW AND ANALYSIS

### A.    Standard of Law

Summary judgment is proper when, after reviewing the pleadings, the discovery and disclosure materials on file, and any affidavits, the court determines there is no genuine issue of material fact. *See* Fed. R. Civ. P. 56. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Id.*; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56, the nonmoving party must come forward with specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.* The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's]

favor." *Id.* at 255; *see also Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

"Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that 'the better course would be to proceed to a full trial.'" *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) (quoting *Anderson*, 477 U.S. at 255).

## B.  Waiver

As a threshold matter, plaintiffs contend that Fieldwood waived the basis for its motion by failing to plead it as an affirmative defense in its answer.[22] The Court is not persuaded. In its answer, Fieldwood asserted as its ninth affirmative defense that "Plaintiffs' claims against Fieldwood are barred by the exclusive remedy provisions of the Longshore and Harbor Workers' Compensation Act [("LHWCA")]."[23] Furthermore, in a status report to the Court filed into the record on December 7, 2015, Fieldwood expressly stated that it "anticipate[d] that the evidence will demonstrate that Mr. Singleton was Fieldwood's borrowed servant, for which the Longshore & Harbor Worker's Compensation Act, 33 U.S.C. § 901 *et seq*., provides Fieldwood with tort immunity."[24] These facts distinguish this case from *Barnes v. Sundowner Offshore Services, Inc.*, on which plaintiffs rely. *See* No. 94-3272, 1995 WL 529866 (E.D. La. Sept. 7, 1995). In *Barnes*, the court found that the plaintiffs would have been prejudiced by a defendant's assertion of the borrowed employee defense "on the eve of trial," when the defendant had not clearly put plaintiffs on notice in discovery that it would be an issue, had not pleaded it as an affirmative defense, and in fact had made "specific allegations entirely inconsistent" with the defense. *See id.* at *1 & n.2. Accordingly, the Court finds that Fieldwood did not waive the basis for its motion for summary judgment.

---

[22]R. Doc. No. 40, at 1-3.
[23]R. Doc. No. 10, at 5.
[24]R. Doc. No. 28, at 2-3.

C.     **Borrowed Employee Status**

1.)     **Applicable Law**

It is well settled that if Singleton is Fieldwood's borrowed employee, then the LHWCA precludes any tort remedy against Fieldwood. *See, e.g.*, *Melancon v. Amoco Prod. Co.*, 834 F.2d 1238, 1243 (5th Cir. 1988); *Jackson v. Total E & P USA, Inc.*, 341 F. App'x 85, 86 (5th Cir. 2009).

Courts apply a nine-factor test when determining whether a plaintiff was a borrowed employee for the purposes of LHWCA tort liability:

(1) Who had control over the employee and the work he was performing, beyond mere suggestion of details or cooperation?
(2) Whose work was being performed?
(3) Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?
(4) Did the employee acquiesce in the new work situation?
(5) Did the original employer terminate his relationship with the employee?
(6) Who furnished tools and place for performance?
(7) Was the new employment over a considerable length of time?
(8) Who had the right to discharge the employee?
(9) Who had the obligation to pay the employee?

*Billizon v. Conoco, Inc.*, 993 F.2d 104, 105 (5th Cir. 1993) (citing *Brown v. Union Oil Co. of California*, 984 F.2d 674, 676 (5th Cir. 1993)); *see also Bourgeois v. W&T Offshore, Inc.*, No. 13-294, 2013 WL 4501326, at *2 (E.D. La. Aug. 21, 2013) (Africk, J.). The Fifth Circuit "has held many times that no single factor is determinative." *Id.* at 106.

"The question of borrowed-employee status is a question of law for the district court to determine." *Billizon*, 993 F.2d at 106. "But in some cases, factual disputes must be resolved before the district court can make its legal determination." *Id.* On the other hand, "if sufficient basic factual ingredients are undisputed, the court may grant summary judgment." *Capps v. N.L. Baroid-NL Indus., Inc.*, 784 F.2d 615, 617 (5th Cir. 1986).

6

### 2.)        Factors That Plaintiff Concedes

At the outset, it is undisputed that Singleton had been doing Fieldwood's work for a considerable length of time at the time of the accident. It is further undisputed that Fieldwood had both the right to discharge Singleton and the obligation to furnish the funds from which Singleton was paid. *See Melancon*, 834 F.2d 1238, 1246 (5th Cir. 1988). Accordingly, plaintiffs concede that the second, seventh, eighth, and ninth factors weigh in favor of a finding of borrowed employee status.[25]

### 3.)        Factors Not Subject to Genuine Factual Dispute

The Court finds no genuine factual dispute with respect to the sixth factor, which "asks: Who furnished tools and place for performance?" *Capps*, 784 F.2d at 618. This factor involves balancing what was provided by the borrowing employer and the lending employer. *See Melancon*, 834 F.2d at 1246. In *Melancon*, the Fifth Circuit had "no problem in agreeing" that the balance favored the borrowing employer, which had provided "certain consumables, the place of performance, transportation to and from the place of work, food, lodging, etc.," while the lending employer provided only the plaintiff welder's "welding machine and related equipment." *See id.*

It is undisputed that Fieldwood provided the place of work, food and lodging, and transportation, and that ACI billed Fieldwood for the use of some pieces of equipment.[26] Accordingly, the Court finds *Melancon* to be persuasive on this point and Singleton has not distinguished it. The Court finds that this factor weighs in favor of a finding of borrowed employee status. *See id.*

---

[25]R. Doc. No. 40, at 11, 16.
[26]R. Doc. No. 38-2, at 5; R. Doc. No. 40-2, at 5.

**4.)**     **Factors Subject to Genuine Factual Dispute**

Considering the briefs, the applicable law, and the record evidence submitted by the parties, the Court finds that unsettled questions of fact pervade the analysis with respect to the first, third, fourth, and fifth factors. Essentially, Fieldwood argues that Alcina and Mobley were also Fieldwood's borrowed employees and, therefore, (1) Fieldwood exercised the requisite degree of control over Singleton through Alcina and Mobley, (2) there was an agreement between Fieldwood and ACI that this would be the case, (3) Singleton acquiesced to this situation, and (4) ACI functionally terminated its relationship with Singleton.

Yet the Court discerns numerous unsettled factual issues revolving around the relationship between Alcina, Mobley, and Singleton. First, Singleton denies knowing who Alcina was which raises a fact question regarding the requisite degree of control exerted by Alcina. Second, Fieldwood's argument is heavily dependent on a finding that Mobley was also a borrowed employee, yet Fieldwood offers little evidence specific to Mobley which would support such a finding.[27] The factual record presented is equally consistent with a finding that Mobley was also an ACI employee at all times, ACI controlled Singleton through Mobley, Paragraph 7 of the MSC accurately reflects ACI and Fieldwood's understanding that Fieldwood would exercise no control over Singleton, Singleton acquiesced only to continuing employment *by ACI* on Fieldwood facilities, and ACI did not terminate its relationship with Singleton. The Court would benefit from additional factual development of these matters at trial.

---

[27]For example, with respect to the first control factor, Fieldwood only offers Alcina's affidavit that he "inspected the work performed by Mr. Mobley, Mr. Singleton and the other ACI crew" and requested changes. R. Doc. No. 38-3, at 4. Fieldwood does not satisfactorily explain how this constitutes the requisite degree of control, as compared to "mere suggestion of details." *Capps*, 784 F.2d at 617.

8

Moreover, the fact that Singleton was directly supervised by Mobley, another ACI employee, distinguishes this case from the majority of the Fifth Circuit cases cited by the parties. *See Billizon*, 993 F.2d at 105 (finding the plaintiff to be a borrowed employee in part because "[n]o [original employer] supervisors were in the field to oversee Billizon's work"); *Melancon*, 834 F.2d at 1245 ("Melancon took orders only from Amoco personnel who told him what work to do, and when and where to do it. Beraud gave no instructions to Melancon except to go to the Amoco field and perform the work requested by Amoco personnel."); *Capps*, 784 F.2d at 617 ("Capps also testified that Davis gave him no instructions concerning the work he was to perform at Baroid. . . . Davis turned the employees over to the complete control of Baroid . . . .").[28] The fact that Singleton received his work orders from another ACI employee suggests a continuous employment relationship with ACI, his original employer, that was absent in those cases and alters the analysis with respect to the first, third, fourth, and fifth factors. The Court finds that the aforementioned material factual issues exist with respect to the first, third, fourth, and fifth factors.

**5.)    Weighing the Factors**

"[N]o single factor is determinative." *Billizon*, 993 F.2d at 106. However, the Fifth Circuit has stated at various times that the first, fourth, fifth, sixth, and seventh factors are more important. *See Melancon*, 834 F.2d at 1245 & n.12; *Jackson v. Total E & P USA, Inc.*, 341 F. App'x 85, 87 (5th

---

[28]The Court finds the opinion in *Tajonera v. Black Elk Energy Offshore Operations* to be more instructive. In *Tajonera*, the plaintiff was employed by D & R but worked for Grand Isle pursuant to a Master Service Agreement. *See* No. 13-0366, 2014 WL 5113322, at *1 (E.D. La. Oct. 10, 2014) (Brown, J.). However, as here, there was conflicting evidence regarding whether the plaintiff was directly supervised by D & R employees or Grand Isle employees. *See id.* at *10-13. On the basis of those factual issues, the court found fact disputes as to the first, third, and fifth factors, which disputes precluded summary judgment as to borrowed employee status. *See id.* at *14-15. Plaintiffs cited *Tajonera* in their opposition, yet Fieldwood failed to address that case in its reply and did not distinguish it from the facts presented here.

Cir. 2009).

On the record presented to the Court, the second, sixth, seventh, eighth, and ninth factors weigh in favor of finding that Singleton was Fieldwood's borrowed employee. However, there are unsettled factual issues with respect to the first, third, fourth, and fifth factors. On this record, the Court finds insufficient "basic factual ingredients" to decide the borrowed employee issue on summary judgment. *Capps*, 784 F.2d at 617. Rather, the Court "believes that the better course would be to proceed to a full trial" and to revisit this question of law in light of a developed trial record, which may potentially include the submission of factual disputes to the jury. *See Firman*, 684 F.3d at 538 (internal quotation marks omitted).

**CONCLUSION**

For the foregoing reasons,

**IT IS ORDERED** that Fieldwood's motion for summary judgment is **DENIED**.

New Orleans, Louisiana, July 19, 2016.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**